IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBIN RICKETTS,                          Case No. 3:12-cv-02324-AA
                                              OPINION AND ORDER
          Plaintiff,

     v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

          Defendant.
_____

Tim Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, Nevada 89137
     Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Gerald J. Hill
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
     Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Robin Ricketts brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On November 2, 2009, plaintiff applied for DIB. Her application was denied initially on March 18, 2010, and upon reconsideration on June 30, 2010. Tr. 30, 98, 104. Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 110. On December 14, 2011, an ALJ hearing was held before the Honorable Rudolph M. Murgo. Tr. 45. Plaintiff was represented by counsel and testified on her own behalf. Tr. 49. Margaret R. Moore, Ph.D., an impartial medical expert ("ME"), and Richard R. Keough, an impartial vocational expert, also testified at the hearing. Tr. 69, 79. On December 22, 2011, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 39. The Appeals Council denied plaintiff's request for review and plaintiff subsequently filed a complaint in this Court. Tr. 1-3.

## STATEMENT OF FACTS

Born on August 18, 1963, plaintiff was 44 years old on the alleged onset of disability and 48 at the time of the hearing. Tr. 35, 49. Plaintiff graduated from high school and completed the police academy. Tr. 51. From July 1989 through March 1996,

plaintiff served as a corrections deputy in Multnomah County. Tr. 54. Thereafter, plaintiff worked as a peer jury coordinator. Tr. 55. More recently, plaintiff worked part-time for a private investigator and as a self-employed housekeeper. Tr. 53.

Plaintiff alleges that she became disabled on January 1, 2008 due to a combination of impairments including: shoulder pain, a bipolar disorder, an anxiety disorder, and a personality disorder. Tr. 34-35.

### STANDARD OF REVIEW

This Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence is more than a mere scintilla but less than a preponderance." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation and internal quotations omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). Even if the evidence is susceptible to more than one reasonable interpretation, the Commissioner's reasonable interpretation must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The court "will not reverse an ALJ's decision for harmless

error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006)) (internal quotations omitted). The burden of showing that an error is harmful rests on the party challenging the ALJ's disability determination. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

The burden of proof initially rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Under the authority of the Act, the Commissioner has established a five-step sequential evaluation process for a claimant's disability determination. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." Bowen, 482 U.S. at 140; 20 C.F.R. § 404.401(b); 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in a substantial gainful activity, she is not disabled.

At step two, the ALJ determines whether the claimant has a "medically severe impairment or combination of impairments." Bowen, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(ii). Impairments

Page 4 - OPINION AND ORDER

"may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). If no severe impairment is determined, the claimant is not disabled.

At step three, the ALJ determines whether the impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." Bowen, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Bowen, 482 U.S. at 141.

At step four, the ALJ determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can engage in past relevant work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Commissioner at step five to demonstrate that other work exists in the national economy that the claimant can perform despite her impairment. If this burden is met, the claimant is not disabled. Bowen, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(a)(4)(v).

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 32. At step two, the ALJ determined that plaintiff has the following severe impairments: "left shoulder impingement,

Page 5 - OPINION AND ORDER

bipolar disorder, anxiety NOS, personality disorder, and cluster B personality traits." Id. At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. Id.

Because plaintiff failed to establish disability at step three, the ALJ continued to evaluate how plaintiff's impairments effected her ability to work. The ALJ resolved that plaintiff had the following residual functional capacity ("RFC"):

> claimant [can] perform light work as defined in 20 C.F.R. § 404.1567(b), with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk 6 of 8 total workday hours, and sit 6 to 8 total workday hours. The claimant can no more than occasionally engage in tasks requiring her to lift overhead with her left upper extremity, or engage in tasks requiring her to climb ladders, ramps or scaffolds. She can lift up to shoulder height with her left upper extremity frequently. The claimant should not work around heights, hazards or heavy equipment. The claimant is limited to simple, routine tasks that require no contact with the public and only occasional contact with coworkers, but no teamwork.

Tr. 34.

At step four, the ALJ found that plaintiff is capable of performing her past relevant work as a non-supervisory housekeeper. Tr. 37. In the alternative, at step five, the ALJ found that other work existed that plaintiff could perform despite her impairments, such as laundry folder, small products assembler, usher, ticket taker, and locker room clerk. Tr. 38. Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. Id.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly

evaluating her credibility; (2) rejecting the lay testimony of her
former husband; (3) inadequately weighing the opinion of examining
doctor Daryl Birney, Ph.D.; (4) inadequately weighing the opinion
of nurse practitioner Debora Stout; (5) failing to include all of
her limitations in the RFC.

I.    Plaintiff's Testimony

Plaintiff contends that the ALJ failed to provide a clear and
convincing reason supported by substantial evidence for
discrediting her subjective testimony. Except in cases involving an
affirmative finding of malingering, the court must evaluate whether
the ALJ's reasons for discrediting a plaintiff's subjective
testimony were clear and convincing. Dodrill v. Shalala, 12 F.3d
915, 918 (9th Cir. 1993). "The ALJ must specify what testimony is
not credible and identify the evidence that undermines the
claimant's complaints." Burch v. Barnhart, 400 F.3d 676, 680 (9th
Cir. 2005). The reasons provided must be "sufficiently specific" to
demonstrate the decision was not made arbitrarily; if, however,
clear and convincing evidence is proffered, the court may not
substitute its own reasoning for that of the ALJ. Thomas v.
Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

At the hearing, plaintiff testified that ongoing mental health
issues prevent her from working. Tr. 53-69. She stated that she has
social anxiety and "just can't think about going and sitting and
being around people." Tr. 57. Additionally, plaintiff remarked that
she is unable to concentrate, which was the primary reason she was

Page 7 - OPINION AND ORDER

terminated from the private investigation agency. Tr. 67. Further, plaintiff described experiencing "manic phase(s)," which entail "sleep[ing] very much because it seems like my mind is really busy all the time or maybe I'm cleaning a lot or oftentimes I'll just drive . . . for days and days and days"; she indicated that these phases are often triggered by stress and can last up to three months. Tr. 63-64. As for activities of daily living, plaintiff indicated that she drives her children home from school, travels out of state with her sister, attends her children's sporting events and church, and completes household chores. Tr. 57, 59, 61, 68. Other than lifting heavy objects overhead, plaintiff stated she has no physical limitations. Tr. 56.

After summarizing plaintiff's testimony, the ALJ found that, although "claimant's medically determinable impairments could reasonable be expected to cause some of the alleged symptoms," she was not fully credible due to inconsistencies between her testimony and the majority of the medical evidence in the record, her work history, and her activities of daily living.

First, as the ALJ noted, plaintiff worked after the alleged onset date. Tr. 559, 577, 580. Subjective symptom testimony inconsistent with a claimant's work record can provide a clear and convincing reason to discredit the testimony. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Notably, the record contains evidence of an ongoing work history of "either being self-employed, employed, or running a business cleaning up vacation rental properties." Tr. 35. Most recently, plaintiff worked part-time as

Page 8 - OPINION AND ORDER

a housekeeper, and housekeeping is exactly the type of light exertion work that the ALJ identified at step four. Tr. 37, 54, 559, 577.

Inconsistencies among a claimant's subjective symptom testimony and the objective medical evidence can also serve as a clear and convincing reason for discrediting a claimant's testimony. McCawley v. Astrue, 423 F. App'x 687, 689 (9th Cir. 2011). Here, plaintiff indicated that, during periods when she is highly anxious or depressed, she can barely function, yet the majority of the medical evidence, including the statements from the ME, Dr. Moore, and consulting source, Dr. Rethinger, establish that plaintiff is capable of at least light exertion work. Tr. 75-76, 479-82, 485.

Additionally, plaintiff's daily activities indicate that she is capable of light exertion work. The ALJ stated that, "although the claimant alleges an alleged onset date of January 1, 2008, records indicate the claimant's general activity level has been great since that time." Tr. 35. Despite plaintiff's allegation of total debilitation, she is a caretaker for two teenage children, attends her children's sporting events and church, completes the bulk of the household chores, watches her friend's children, cares for elderly individuals, and trained for a half marathon. Tr. 36, 457, 556, 579. "Even where [activities of daily living] suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1113.

Page 9 - OPINION AND ORDER

While the Court recognizes that plaintiff's claim is based primarily on mental limitations that compromise her ability to concentrate, several activities identified by the ALJ, including driving, watching children, and care-taking responsibilities, require significant focus. Further, several of plaintiff's reported activities require a high level of stress and some degree of social interaction, such as caring for elderly people, supervising teenagers, and attending sporting events and church. As the ALJ found, these activities belie plaintiff's statements.

In sum, the ALJ provided clear and convincing reasons, supported by substantial evidence, for discrediting plaintiff's testimony. Accordingly, the ALJ's credibility finding is affirmed.

II. Lay Witness Testimony

Plaintiff next argues that the ALJ improperly discredited the written statements of James Ricketts, plaintiff's former husband. Generally, a lay witness's testimony describing a plaintiff's symptoms is competent evidence which the ALJ must take into account. Dodrill, 12 F.3d at 919. "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina, 674 F.3d at 1114.

Mr. Ricketts completed an "Adult Functional Report - Third Party" questionnaire on December 4, 2009. Tr. 216. In the questionnaire, he made observations about plaintiff's daily routine, contributions to the household, and alleged limitations.

Page 10 - OPINION AND ORDER

Mr. Ricketts stated that on a typical day, plaintiff takes care of her children and may clean the house, make dinner, and watch television. Tr. 216, 218. He indicated that she needs reminders to take her medication and to do "what needs to be done." Tr. 218. He stated that "she doesn't seem to be able to concentrate very well anymore which keeps her from doing much at all," but nonetheless can follow a written instruction "if its short." Tr. 220-21. Finally, Mr. Ricketts mentioned that plaintiff struggles in her social interactions, including with authority figures. Id.

The ALJ determined that Mr. Ricketts' statements "are somewhat persuasive determining the claimant's level of functioning," but were not fully credible due to Mr. Ricketts' "close personal relationship with the claimant at the time the statement was made." Tr. 36. The ALJ also noted that Mr. Ricketts "posses neither the expertise nor the motivation to offer an objective or functional assessment." Id.

Plaintiff is correct that the ALJ erred in addressing the lay testimony. See, e.g., Jessie v. Astrue, 360 Fed.Appx. 876, 877 (9th Cir. 2009) (ALJ's conclusory statement that lay witness's testimony had to be discounted due to personal relationship, lack of expertise, and improper motivation, without any discussion of extent of witness's relationship with and desire to help applicant, was legally insufficient). Nevertheless, this error was harmless because Mr. Ricketts' testimony is nearly identical to plaintiff's properly discredited testimony. Tr. 57, 67, 218, 220. Where, as here, "lay witness testimony does not describe any limitations not

Page 11 - OPINION AND ORDER

already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." Molina, 674 F.3d at 1117. The ALJ's clear and convincing reasons for rejecting plaintiff's subjective testimony, including her fairly extensive activities of daily living, apply with equal force to the lay witness testimony. Thus, the ALJ's decision is affirmed as to this issue.

## III. Acceptable Medical Source Evidence

Plaintiff also contends that the ALJ improperly weighed the testimony of Dr. Birney. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). Additionally, greater weight is afforded to "opinions that are explained than to those that are not, . . . and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." Id. (citations omitted). To reject the uncontested opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31). If a treating or

Page 12 - OPINION AND ORDER

examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Lester, 81 F.3d at 830-31.

On March 1, 2010, Dr. Birney performed a psychodiagnostic evaluation of plaintiff based on his personal observations, limited medical records, and plaintiff's self-reports. Tr. 35, 465. Dr. Birney diagnosed plaintiff with an anxiety disorder NOS, a panic disorder without agoraphobia, post traumatic stress disorder ("PTSD"), and borderline intellectual functioning. Tr. 467. Although Dr. Birney briefly discussed plaintiff's functional limitations,[1] he gave no indication of how these limitations would effect plaintiff's ability to work. Tr. 466.

The ALJ gave little weight to Dr. Birney's opinion because it was inadequately supported by his clinical findings and based primarily on plaintiff's discredited statements:

> Dr. Birney diagnosed the claimant with borderline intellectual functioning without any support from objective testing and with the knowledge claimant had been a Sheriff's deputy for nine years. Similarly, Dr. Birney diagnosed the claimant with PTSD, but again this diagnosis is not supported by his clinical interview with the claimant. Going entirely off the claimant's self-report without performing any objective testing, Dr. Birney's additional diagnosis included bipolar I disorder, anxiety disorder, panic disorder without agoraphobia, and current GAF of 45-50. This reckless manner of forming diagnosis places a cloud over Dr. Birney's findings, which must be viewed with extreme caution, as Dr. Birney's work appears quite careless.

___

[1] Specifically, Dr. Birney stated that plaintiff's "attention, concentration, everyday judgment, and abstract reasoning are compromised. Her overall intellectual function has deteriorated." Tr. 446.

Page 13 - OPINION AND ORDER

Tr. 35.

"An ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." Bayliss, 427 F.3d at 1216. Further, an ALJ may reject a medical opinion that includes "no specific assessment of [the claimant's] functional capacity" during the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). Likewise, an ALJ can disregard a medical report that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Reliance on a claimant's discredited subjective complaints is also a clear and convincing reason to reject an examining doctor's testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

As the ALJ noted, a diagnosis of borderline intellectual functioning usually requires some kind of objective testing, such as I.Q. testing. Dr. Moore, the ME whose opinion the ALJ gave great weight, testified that it is "extremely unusual . . . for an examiner [to diagnose borderline intellectual functioning] without benefit of actually testing the claimant."[2] Tr. 70. Yet Dr. Birney made this diagnosis without performing any objective testing on plaintiff during his examination, let alone those aimed at plaintiff's intellectual functioning. Tr. 466-68. Additionally, the

---

[2] Dr. Moore also remarked that Dr. Birney's findings were closer to "an assumption or an impression" than a diagnosis and "to formally make that diagnosis, I thought was really not supported." Tr. 70.

diagnosis of borderline intellectual functioning conflicts with plaintiff's history of working as a corrections deputy; her successful and lengthy employment history in a challenging profession indicates a cognitive functioning greater than the borderline range. Tr. 70.

Further, Dr. Birney did not provide any opinion concerning how plaintiff's functional limitations would affect her ability to engage in sustained work activity. Finally, as the ALJ observed, because Dr. Birney did not perform any objective testing, his opinion is based largely on plaintiff's discredited statements. Therefore, the ALJ provided legally sufficient reasons, supported by substantial evidence, for giving little weight to Dr. Birney's evaluation. As a result, the ALJ's rejection of Dr. Birney's opinion is affirmed.

IV.  Non-Acceptable Medical Source Evidence

Plaintiff asserts that the ALJ erred in giving little weight to Ms. Stout's statements. Although only "acceptable medical sources" can diagnose and establish that a medical impairment exists, evidence from "other sources" can be used to determine the severity of that impairment and how it limits claimant's function in a work activity. 20 C.F.R. § 404.1513(a), (d). Non-acceptable medical sources include nurse practitioners. 20 C.F.R. § 404.1513(d); SSR 06-03p, available at 2006 WL 2329939. To disregard the opinion of a non-acceptable medical, or lay, source, the ALJ need only provide a reason that is "arguably germane" to that witness. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th

Page 15 - OPINION AND ORDER

Cir. 2010).

Ms. Stout began working with plaintiff in 2003 for counseling and medication management related to mental health issues. Tr. 354. Generally, Ms. Stout's clinical notes indicate that plaintiff had cycles of good functioning followed by cycles of poor functioning. Often the cycles of poor functioning ran parallel to periods of significant life stressors, including marital and financial struggles. Tr. 576, 580, 584, 586. Beginning in August 2007, plaintiff reported generalized malaise and fatigue, and Ms. Stout began monitoring plaintiff two to three times per month. Tr. 358. Ms. Stout opined that plaintiff's diagnoses included bipolar disorder and PTSD. Tr. 580. Further, Ms. Stout remarked that "limiting work hours does seem to be a factor in decreased mood symptoms." Tr. 377. She proffered that plaintiff's functional limitations require a "high[ly] supportive environment that allows unplanned absence from the work place" and the elimination or reduction of "everyday work stress." Tr. 569.

The ALJ gave little weight to Ms. Stout's statements "because they are not supported by the record and [plaintiff's] activities" of daily living. Tr. 36. An ALJ may disregard lay witness testimony that is inconsistent with the medical evidence of record or the claimant's activities of daily living. Lewis v. Apfel, 236 F.3d 503, 511-12 (9th Cir. 2001); Hutchens v. Astrue, 433 Fed.Appx. 510, 512 (9th Cir. 2011).

Substantial evidence supports the ALJ's determination that Ms. Stout's statements were inconsistent with the medical record and

Page 16 - OPINION AND ORDER

plaintiff's daily activities. For example, Ms. Stout diagnosed plaintiff with PTSD, but Dr. Moore reported that the causal event and residual symptoms of this diagnosis were not identified in Ms. Stout's reports, rendering the diagnosis unpersuasive. Tr. 71-72. Further, as discussed above, plaintiff trained for a half marathon, attended her children's sporting events and church, managed her house, completed her self-care independently, traveled out of state, and drove her children home from school during the relevant time period. Tr. 36, 457, 556, 579. Plaintiff also continued to work at least part-time cleaning houses after the alleged onset date of her impairment. Tr. 559, 577. As the ALJ observed, plaintiff's participation in these activities is inconsistent with the alleged severity of plaintiff's impairment as described by Ms. Stout.

In sum, these inconsistencies are germane to Ms. Stout and are sufficient reasons for affording her testimony less weight. Therefore, the ALJ's determination as to Ms. Stout is affirmed.

V.  The ALJ's RFC Assessment and Step Four and Step Five Findings

Lastly, plaintiff contends that the ALJ's RFC and, by extension, his step four and step five findings, are erroneous because the ALJ failed to account for all of plaintiff's limitations. The RFC is the most a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe; the ALJ must also evaluate "all of the relevant medical and other evidence." SSR 96-

Page 17 - OPINION AND ORDER

8p, available at 1996 WL 374184; 20 C.F.R. § 404.1545(a). However, the ALJ's RFC must only incorporate limitations supported by substantial evidence in the record. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

To the extent that plaintiff argues that the RFC is erroneous for failing to include limitations described by her, Mr. Ricketts, Dr. Birney, and Ms. Stout, her argument is rejected. As discussed above, the statements by plaintiff, Mr. Ricketts, Dr. Birney, and Ms. Stout were appropriately discredited by the ALJ. Accordingly, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. Bayliss, 427 F.3d at 1217-18; McCutcheon v. Astrue, 378 Fed.Appx. 649, 652 (9th Cir. 2010).

To the extent that plaintiff asserts that the RFC is erroneous because Dr. Paul Rethinger, Ph.D., a State Agency psychological consultant, endorsed a one-to-two step directions limitation that was not allegedly reflected therein, her argument is also rejected. On March 10, 2010, Dr. Rethinger reviewed plaintiff's medical file and found evidence of an affective disorder and an anxiety disorder. Tr. 469-82. He opined that these impairments caused a "mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate deficits in concentration, persistence, or pace." Tr. 36. In translating these deficits into functional limitations, Dr. Rethinger proffered that "claimant is capable of understanding and remembering simple 1-2 step instructions," and "carrying out simple

Page 18 - OPINION AND ORDER

instructions/tasks." Tr. 485.

The ALJ afforded Dr. Rethinger's testimony great weight. Tr. 34, 36. In formulating the RFC, the ALJ considered the entirety of the record and "limited [plaintiff] to simple, routine tasks." Id. Plaintiff does not detail how this limitation to simple, routine tasks is insufficient to account for Dr. Rethinger's statement that she is capable of performing one-to-two step instructions. By definition, simple, routine tasks require a limited number of steps. Accordingly, the Court finds that the RFC adequately accounted for Dr. Rethinger's opinion. Moreover, an RFC determination is based upon all medical evidence in the record and not solely upon the assessment of one physician. Dr. Moore, to whose opinion the ALJ also afforded great weight, found that plaintiff could perform "simple, routine tasks." Tr. 76. As such, the ALJ did not err is this regard.

Finally, to the extent plaintiff argues that the ALJ erred at step four by determining that she could return to her past relevant work as a non-supervisory housekeeper, her argument fails. Essentially, plaintiff contends that, because she performed supervisory and non-supervisory duties in that position, it was erroneous for the ALJ "to classify a job by its least demanding characteristics." Pl.'s Opening Br. 19 (citation and internal quotations omitted). Plaintiff's argument misses the mark. Initially, plaintiff does not dispute the ALJ's finding that she is capable of fulfilling regular housekeeping jobs. See id. at 17-19. In any event, the fact that plaintiff worked in both a supervisory

Page 19 - OPINION AND ORDER

and non-supervisory capacity does not preclude the ALJ from finding her not disabled where the record demonstrates that she can still perform work as a regular housekeeper, which, in fact, is a discrete position from a supervisory housekeeper and categorized under a separate DOT listing. See Tr. 81-83. Therefore, the ALJ's RFC and step four and five findings are affirmed.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 23 day of February 2014.

Ann Aiken
United States District Judge